IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JAMES PARMER, | ) | |
| | ) | Case No. CV 08-46-S-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION AND** |
| v. | ) | **ORDER** |
| | ) | |
| IDAHO CORRECTIONAL | ) | |
| CORPORATION; JOHN DOES 1-3; | ) | |
| and CORRECTIONAL MEDICAL | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court in this prisoner civil rights case are the following Motions: Defendant Idaho Correctional Corporation's ("ICC") Motion to Dismiss (Docket No. 20), Defendant Correctional Medical Services ("CMS") Motion to Dismiss (Docket No. 29), Plaintiff's Motion for Reconsideration of Appointment of Counsel (Docket No. 37), and Plaintiff's Motion to Clarify Order (Docket No. 38).

Having reviewed the record in this matter, and having considered the written arguments of the parties in the briefing, the Court concludes that oral argument is unnecessary pursuant to Dist. Idaho Loc. Civ. R. 7.1(2)(ii). Accordingly, the Court enters the following Order.

**MEMORANDUM DECISION AND ORDER - 1**

# BACKGROUND

Plaintiff is an inmate in the custody of the Idaho Department of Corrections ("IDOC"). He was housed at the Idaho State Correctional Institution ("ISCI"), but was transferred to the Idaho Correctional Corporation ("ICC"), a privately-run prison, on or about November 21, 2006. According to his complaint, he was threatened by other inmates upon his arrival at ICC and asked prison employees if he could transfer to a different cell. The prison employees would not move him to a different cell despite Plaintiff's repeated requests. Upon returning to his cell, the other inmates in Plaintiff's cell attacked him, and he suffered severe facial injuries and fractured ribs. Thereafter, he was transferred back to ISCI.

Plaintiff alleges that ICC was aware of the dangerous conditions in its prison and failed to segregate dangerous inmates from vulnerable inmates or from each other, and did not discipline inmates who harmed others. (Compl. ¶ 16.) He also alleges prison employees are inadequately trained to supervise and discipline inmates. (Compl. ¶ 17.) Finally, Plaintiff asserts that ICC failed to respond to his repeated requests for medical treatment, but was instead taken to segregation. He alleges that ICC denied him medical treatment between November 21, 2006 and December 14, 2006, when he was transferred back to ISCI. Plaintiff further asserts that CMS, the contract medical care provider for prisoners housed in ISCI, denied him necessary medical care to save costs for ISCI and IDOC. He seeks relief for his deliberate indifference claims under the Eighth Amendment of the Constitution.

Defendants CMS and ICC both assert that dismissal of Plaintiff's claims is warranted because he failed to exhaust his administrative remedies with respect to his medical care requests and complaints about dangerous prison conditions. (Mot. Docket No. 20; Mot. Docket No. 29.)

## DEFENDANTS' MOTIONS TO DISMISS

**Standard of Law**

Defendants allege that Plaintiff failed to exhaust his administrative remedies prior to filing his lawsuit. Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The inmate must completely exhaust his remedies, and not fail to go beyond the initial step. *Booth v. Churner*, 532 U.S. 731, 735 (2001).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The *Jones v. Bock* Court noted that the important policy concern behind requiring

---

[1] 110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq*.

exhaustion is that it "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 914. The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In addition, the exhaustion requirement applies to private prisons. *Roles v. Maddox*, 439 F.3d 1016, 1018 (9th Cir. 2006).

Where there is an "informal[]" and "relative[ly] simpl[e]" prison grievance system, prisoners must take advantage of it before filing a civil rights complaint. *Woodford v. Ngo*, 548 U.S. at 103. In *Woodford v. Ngo*, the prisoner had filed his grievance within six months of the incident at issue, rather than within fifteen days as required by the California Prison grievance system. *Id*. at 86-87. The Supreme Court rejected the Ninth Circuit's determination that the prisoner "had exhausted administrative remedies simply because no such remedies remained available to him." *Id*. at 87.

Failure to exhaust remedies is an affirmative defense that should be brought as an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2002). In deciding a motion to dismiss for failure to exhaust administrative remedies, a court may look beyond the pleadings and decide disputed issues of fact. *Id.* at 1119-20. Defendants bear the burden of proving failure to exhaust. *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005).

**Discussion**

**MEMORANDUM DECISION AND ORDER - 4**

ICC, as a private contractor with the State of Idaho, uses the same grievance procedure as the IDOC, which is Directive 316. (Aff. of Martinez ¶ 3, Docket No. 20-3.) ICC has a relatively simple grievance procedure consisting of a three-step process. (Aff. of Martinez ¶¶ 4-7, Docket No. 20-3.) The inmate first submits an inmate concern form, then a grievance, and then an appeal of the grievance. (Aff. of Martinez ¶ 3, Docket No. 20-3; Aff. of Jill Whittington, Exs. A and B, IDOC Policy 316 and IDOC Division of Operations Directive 316.02.01.001, Docket No. 29-5). ICC logs grievances into a grievance log and gives the inmate a copy. (Aff. of Martinez ¶ 6, Docket No. 20-3.) Inmates can submit grievances regardless of any security classification or restrictive housing status, and if an inmate is transferred, any grievances initiated by an inmate while at ICC would be forwarded to the new facility where the inmate is housed. (Second Aff. of Martinez ¶¶ 4-5, Docket No. 27-2.) There are no records at ICC that Plaintiff submitted any inmate concern form or inmate grievance form concerning the incidents alleged in his Complaint. (Aff. of Martinez ¶¶ 8-10, Docket No. 20-3.)

IDOC's grievance process for inmates housed at ISCI is explained in Policy 316, which has been in effect since February 2001. (Aff. of Whittington ¶ 3, Docket No. 29-5.) IDOC has the same three-step process, consisting of completing an inmate concern form, a grievance, and then a grievance appeal; and all grievances are logged into a searchable electronic database. (Aff. of Whittington ¶¶ 5-10, 12, Docket No. 29-5.) IDOC also has no records of any processed grievances by Plaintiff from October 26, 2006 to the present. (Aff. of Whittington ¶ 14, Docket No. 29-5.)

**MEMORANDUM DECISION AND ORDER - 5**

Plaintiff does not contest Defendants' allegations that he did not submit a grievance for any of his claims. Rather, he alleges that he "filed concerns to medical about the failure to treat my serious injuries and to ICC official [sic] about defendants [sic] failure to protect me from the known danger I faced," but that he was transferred from ICC to ISCI before any of his concerns were responded to. (Decl. of Parmer ¶¶ 7 & 13, Docket No. 33.) The concern form process at ICC and ISCI uses a multi-part form that allows the inmate to keep a copy. (Aff. of Martinez ¶ 7, Attach. A, Docket No. 20-3; Aff. of Whittington Ex. B, Docket No. 20-5.) Neither the originals nor any copies of Plaintiff's concerns have been produced. Plaintiff contends that he no longer has possession of the concerns he submitted because they were removed from his personal property by prison officials.[2] (Pl.'s Response at 3, Docket No. 25.)

After *Jones v. Bock*, several district courts have determined that a prison's failure to respond to a timely-submitted *grievance* within the procedure's specified time frame for a response is the equivalent of exhaustion of administrative remedies. *See Harden v. South Carolina Dept. of Corr.*, 2007 WL 675632, at *3 (D.S.C. 2007); *Stewart v. Tai*, 2007 WL 1008024, at *3 (D. Mich. 2007). However, there are no cases deeming exhaustion "complete" if an inmate fails to file a formal grievance after receiving no

---

[2] The only form Plaintiff has submitted is a Health Services Request Co-Pay Form requesting Ibuprofen for pain on November 24, 2006. (Decl. of Parmer ¶ 9, Ex. B, Docket No. 33.) The form includes a response from the medical unit indicating that an evaluation was completed and medication ordered. Because it includes a response, this form does *not* support Plaintiff's argument that a non-response to the initial informal resolution form in a grievance procedure is sufficient to be deemed exhaustion of administrative remedies.

**MEMORANDUM DECISION AND ORDER - 6**

response at the informal resolution stage.

The Court concludes that, even if Plaintiff filed concerns that yielded no responses, *Harden* and *Stewart* are distinguishable from the facts of Plaintiff's case because the failure of *an employee directly involved* in the alleged constitutional violation to respond to a concern form does not excuse Plaintiff from proceeding past the first step of attempting informal resolution to filing a formal grievance and grievance appeal to bring the problem to the attention of *prison supervisors*. Plaintiff's reliance on *Woulard v. Food Service*, 294 F.Supp.2d 596, 602 (D.Del. 2003), is unavailing; in that case, as in *Harden* and *Stewart*, the plaintiff did file a *grievance*, to which prison officials never responded. Here, it is undisputed that Plaintiff did not file any formal grievances.

Neither does the Idaho grievance procedure require a response to the inmate concern form before an inmate can file a formal grievance. Rather, the procedure provides that an inmate must attach a copy of the inmate concern form to the grievance to show the "[s]teps taken to solve an issue." (Aff. of Whittington, Ex. B, Docket No. 29-5). Therefore, the Court rejects Plaintiff's argument that a prison employee's non-response to an inmate concern is the equivalent of a non-response of a supervisory prison official to a grievance.

Plaintiff also asserts that he was excused from exhausting his administrative remedies due to his transfer to another facility. Plaintiff claims that the grievance process contained in the ICC Policy was not functionally available to him because he was transferred to ISCI, and therefore could no longer complain about the conditions at ICC.

**MEMORANDUM DECISION AND ORDER - 7**

(Decl. of Parmer ¶ 13, Docket No. 33.) However, Plaintiff has not shown that administrative procedures were unavailable or that prison officials obstructed his attempt to exhaust his administrative remedies. *See Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008)(explaining that no exception to the exhaustion requirement applied if the prisoner could not show the absence of policies or the obstruction of an attempt to exhaust his remedies). So long as he was in custody at ICC, against whom he had a grievance, he was required to use the grievance procedures available. *Berry v. Kerik*, 366 F.3d 85, 88 (2nd Cir. 2004). Even an inmate who sues for relief once released from custody is not excused from the exhaustion requirement, provided that during his incarceration he had access to the grievance system. *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002).

In this case, Plaintiff suffered his injuries and experienced the allegedly dangerous prison conditions on the first day of his transfer to ICC. According to ICC's policy, he was first required to submit an inmate concern form, to which the prison employee must respond within seven days, and he was required to file a grievance within fifteen days of the incident or problem which formed the basis for the grievance. (Aff. of Martinez ¶¶ 4-5, Docket No. 20-3.) That would mean that Plaintiff would have needed to file a grievance form by December 6, 2006. Plaintiff was not transferred from ICC to ISCI until December 14, 2006, giving him sufficient opportunity to file a grievance form. Any grievances filed while at ICC would have been transferred to IDOC. (Second Aff. of Martinez ¶ 5, Docket No. 27-2.) Accordingly, Plaintiff has not shown that the grievance

**MEMORANDUM DECISION AND ORDER - 8**

system was unavailable to him as a result of his transfer to another facility, and his failure to avail himself of the grievance process is not excused.[3]

Plaintiff has not provided any evidence that he should have been excused from the exhaustion requirements, because prison officials did not obstruct or prevent him from exhausting his administrative remedies. The grievance process remained available to him at all times during his incarceration at ICC, and later after his transfer to ISCI.

**Conclusion**

The Court concludes that Plaintiff did not exhaust his administrative remedies prior to filing his Complaint. The prison has a fairly simple, long-standing grievance process that Plaintiff failed to use. Plaintiff has not brought forward sufficient evidence showing that he either substantially complied with the grievance procedure or that adequate excuse existed for not using the system. The Supreme Court has been very clear that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. at 211.

As a result, the Court shall dismiss all of Plaintiff's claims.

**OTHER PENDING MOTIONS**

As a result of the dismissal of this case, Plaintiff's Motion for Reconsideration of Appointment of Counsel (Docket No. 37) and Plaintiff's Motion to Clarify Order (Docket

---

[3] Plaintiff's argument that the concern process offers no monetary relief, thus excusing him from exhausting his administrative remedies, (Pl.'s Response at 2, Docket No. 25), was rejected by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001).

**MEMORANDUM DECISION AND ORDER - 9**

No. 38) are moot.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

A. Defendant Idaho Correctional Corporation's Motion to Dismiss (Docket No. 20), is GRANTED;

B. Defendant Correctional Medical Services Motion to Dismiss (Docket No. 29), is GRANTED;

C. Plaintiff's Motion for Reconsideration of Appointment of Counsel (Docket No. 37), is DENIED AS MOOT;

D. Plaintiff's Motion to Clarify Order (Docket No. 38), is DENIED AS MOOT; and

E. Plaintiff's case is DISMISSED without prejudice.

DATED: **March 19, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge